**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

BRYAN DANIEL LAGROU,

     Petitioner,                 Civil No. 04-CV-74271-DT
                                HONORABLE ARTHUR J. TARNOW
v.                           UNITED STATES DISTRICT JUDGE

KURT JONES,

     Respondent,
_____/

## OPINION AND ORDER DENYING
## PETITION FOR WRIT OF HABEAS CORPUS [1]

    Bryan Daniel Lagrou, ("petitioner") has filed a petition for a writ of habeas

corpus pursuant to 28 U.S.C. § 2254, in which he challenges his conviction for

first-degree criminal sexual conduct,[2] assault with intent to commit criminal sexual

conduct,[3] and being a fourth felony habitual offender.[4]  For the reasons stated

below, the petition for writ of habeas corpus is **DENIED.**

### I.  Background

    Petitioner was convicted after a jury trial.

    At approximately midnight on October 13, 1996, the complainant was

sleeping on the couch when she was woken by a man on top of her.  The man

_____

[1]    Staff Attorney Daniel Besser provided quality research assistance.
[2]    M.C.L.A. 750.520b(1)(e).
[3]    M.C.L.A. 750.520(g)(1).
[4]    M.C.L.A. 769.12.

*Lagrou v. Jones,* 04-74271-DT

was wearing a bandanna over his face, had cloth gloves on his hands, and wore dark clothes.  The man placed a knife to her throat.  The man digitally penetrated her vagina, and then attempted to put his penis inside her vagina.  The man rubbed his penis on the complainant's stomach until he ejaculated onto her stomach.  After getting dressed, the man took his knife and cut the telephone cord.

After her assailant left, complainant found an extra phone cord and called the police.  She identified her assailant as being petitioner by his voice.  She had met petitioner prior to the sexual assault through a friend.  The two had spoken several times.  Petitioner called her several times in an attempt to go out with her or to come over to her house, but she refused.

When the police arrived at complainant's home on the night of the sexual assault, they found her upset, crying, and shaking.  Police observed a three inch long red mark on her neck that appeared to be almost a cut.  The police also observed a bedroom window with the screen cut.  The police gathered the cut phone cord and the complainant's nightshirt and underwear, and transported them to the Michigan State Police lab for analysis.

Complainant was examined at the hospital by a doctor.  Semen samples were obtained from her abdomen and vagina.  The doctor stated that the abrasion on complainant's neck and the discoloration on her skin beyond the

2

*Lagrou v. Jones,* 04-74271-DT

abrasion were consistent with a knife being held to her neck.

At approximately 1:00 am. on the night of the sexual assault, a White Lake Township patrol officer saw a motorcycle moving at what he estimated was 75 miles per hour.  He tried to follow the motorcycle in his patrol car and as he approached he saw the license plate number on it, and identified the motorcycle as an older model Honda.  The motorcycle accelerated when he put on his overhead lights, and then slowed in a turn lane before speeding off quickly.  He reached speeds of up to 100 miles per hour and was not able to catch up with the motorcycle.

After discontinuing his chase, the officer checked his computer records for the motorcycle.  He called the registered owner's home in Rochester Hills and told the woman there, who identified herself as petitioner's mother, that he had been in a high-speed chase with the motorcycle.  Petitioner's mother informed him that she had heard petitioner leave the house on the motorcycle.

At approximately 3:00 a.m. to 4:00 a.m., three deputy sheriffs went to petitioner's home.  While two deputies talked to petitioner, the other received consent from petitioner's mother to look around in petitioner's room, where he discovered a red bandanna.  He also found a motorcycle that was still warm and parked in the driveway with its license plate missing.  Petitioner told the police that he had been out with his girlfriend that night and that they had gone to a

3

2:04-cv-74271-AJT-RSW   Doc # 30   Filed 05/25/06   Pg 4 of 22   Pg ID 1745

*Lagrou v. Jones,* 04-74271-DT

show.  Petitioner told the officers that someone else had used his motorcycle that night.

Petitioner's girlfriend told the police that she had been at petitioner's home all night watching a movie.  She later admitted to the police that she had lied to protect petitioner.  She explained that she went out to dinner with petitioner on the night in question.  After dinner the two rented a movie and returned to petitioner's house.  She said that Petitioner wanted her to stay the night, but because she was not feeling well she wanted to go home.  Petitioner took her home at approximately midnight.  At approximately 3:30 a.m., she was awakened at her home by petitioner throwing stones at her window.  When she let petitioner into the house, he appeared to be in shock.  Petitioner told her that he had ran from the police.  Petitioner asked her to be his alibi, requesting that she go to his house and tell the police that she had been there with him the entire night.  When the two arrived at petitioner's house, petitioner's mother told them that the police had called looking for petitioner.  Petitioner told his mother about the alibi story.

Petitioner was taken for DNA testing to determine if his DNA matched the DNA that was in the swab taken from complainant.  The DNA report indicated that the chances for someone other than petitioner in the Caucasian population matching this same DNA would be one in 25.6 billion.

After receiving a second search warrant, police searched petitioner's

*Lagrou v. Jones,* 04-74271-DT

house.  The police recovered two large folding knives and several pairs of gloves.

These items were taken to the Michigan State Police lab for a forensic

examination.  The examiner found a type of polymer, which is the same type that

was contained in the cut telephone cord.  However, he could not conclusively

determine whether the polymer on the knife came from the cut telephone cord,

stating that it was not possible to make such a determination.

Petitioner testified that he and the complainant engaged in consensual

sexual activity, but that she became angry and ordered him out of the house after

he informed her that he had another girlfriend.  Petitioner denied using a knife on

the night of the alleged assault.

Petitioner's conviction was affirmed on appeal. *People v. Lagrou*, No.

207166 (Mich. Ct. App. October 22, 1999); *lv. den.* 461 Mich. 1000; 610 N.W. 2d

925 (2000).  Petitioner then filed a post-conviction motion for relief from judgment,

which was denied. *People v. Lagrou,*96-9583-FC (Livingston County Circuit

Court, July 14, 2003); *reh. den.* September 24, 2003.  The Michigan appellate

courts denied leave to appeal. *People v. Lagrou*, No. 251212 (Mich.Ct. App.

March 11, 2004); *lv. den.,* 471 Mich. 896; 688 N.W. 2d 85 (2004).

Petitioner now seeks habeas relief on the following grounds:

I. Michigan Court Rule 6.508(D) is impossible to overcome and to meet
the standards of the same.  Therefore it blocks the right of access to
the State and Federal Courts, thus it is unconstitutional.

5

*Lagrou v. Jones,* 04-74271-DT

II. The Petitioner was denied his Sixth Amendment right to the effective assistance of appellate counsel.

III. Petitioner was deprived of his rights to a fair and impartial trial and due process of law under the Fourteenth Amendment of the Constitution of the United States where prosecution misconduct resulted in through the trial (sic).

IV. Petitioner was denied his Fourteenth Amendment right of effective assistance of trial counsel.

V. Petitioner was denied the right of due process under the Fourteenth Amendment of the Constitution of the United States when the Court ruled that Jennifer Byrd was not a *res gestae* witness.

VI. Petitioner was denied his Fourteenth Amendment right of due process when the trial court allowed defendant's prior criminal record admitted into trial.

VII. Petitioner was deprived of his rights to due process and to equal protection of the law under the State and Federal Constitutions when he was denied the right to self-representation and the right to counsel.

## II.  Standard of Review

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

6

*Lagrou v. Jones,* 04-74271-DT

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

### III.  Discussion

**A.  The post-conviction relief claim.**

Petitioner first alleges that the standards contained in M.C.R. 6.508(D) for obtaining post-conviction relief impose an impossible standard for obtaining post-conviction relief and is therefore unconstitutional.

A federal habeas corpus petition cannot be used to mount a challenge to a state's scheme of post-conviction relief. *Greer v. Mitchell,* 264 F. 3d 663, 681 (6th Cir. 2001). The states have no constitutional obligation to provide post-conviction remedies. *Id.* Any error by the Michigan courts in the application of M.C.R. 6.508(D) to deny petitioner post-conviction relief is an error of state law

7

*Lagrou v. Jones,* 04-74271-DT

that is not cognizable in federal habeas review. *See Simpson v. Jones,* 238 F.

3d 399, 406-407 (6th Cir. 2000).

**B.  The claims of ineffective assistance of appellate counsel, prosecutorial misconduct, ineffective assistance of trial counsel, the exclusion of a *res gestae* witness, and the denial of self-representation and right to counsel.**

The Court will consolidate petitioner's second, third, fourth, fifth, and

seventh claims, because the resolution of these claims is interrelated.

Respondent contends that petitioner's third, fourth, fifth, and seventh

claims are procedurally defaulted, because he raised them for the first time in his

post-conviction motion for relief from judgment and failed to show cause for

failing to raise these issues in his appeal of right, as well as prejudice, as

required by M.C.R. 6.508(D)(3).

In this second claim, petitioner contends that his appellate counsel was

ineffective for failing to raise these claims in his appeal of right, as well as for

failing to raise other claims.  Ineffective assistance of counsel may establish

cause for procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52

(2000).  If petitioner could show that he received ineffective assistance of

appellate counsel that rose to the level of a Sixth Amendment violation, it would

excuse his procedural default for failing to raise his claims on his direct appeal in

the state courts. *Seymour v. Walker*, 224 F. 3d 542, 550 (6th Cir. 2000).  Given

8

*Lagrou v. Jones,* 04-74271-DT

that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of petitioner's defaulted claims, it would be easier to consider the merits of these claims. *See Cameron v. Birkett,* 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004).

In his second claim, petitioner alleges that he was deprived of the effective assistance of appellate counsel.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test.  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*.  In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689.  Second, the defendant must show that such performance prejudiced his defense. *Id*.  To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.  The *Strickland* standard applies as

9

*Lagrou v. Jones,* 04-74271-DT

well to claims of ineffective assistance of appellate counsel. *See Whiting v. Burt,* 395 F. 3d 602, 617 (6th Cir. 2005).

Petitioner first claims that appellate counsel was ineffective for failing to raise on appeal a claim that petitioner was deprived of the right to take a polygraph examination as mandated by M.C.L.A. 776.21(5). The provision of this statute states that a defendant who is charged with first or second-degree criminal sexual conduct or several other sex offenses shall be given a polygraph examination or lie detector test if he or she requests one. However, under Michigan law, even where a defendant passes a polygraph examination, the results are inadmissible at trial. *See People v. Phillips,* 469 Mich. 390, 397; 666 N.W. 2d 657 (2003)(citing *People v. Ray*, 431 Mich. 260, 265, 430 N.W.2d 626 (1988); *People v. Barbara*, 400 Mich. 352, 364, 255 N.W.2d 171 (1977)). Appellate counsel in this case raised a related issue involving the trial court's refusal to admit into evidence a private polygraph examination which the petitioner had allegedly taken and passed concerning the sexual assault. The Michigan Court of Appeals, relying on the holding in *Barbara,* held that the trial court did not err in refusing to admit the results of petitioner's private polygraph examination at trial. *People v. Largrou,* Slip. Op. at * 3.

In light of the fact that Michigan law precludes the admission of polygraph examination results at trial, appellate counsel was not ineffective for failing to

10

*Lagrou v. Jones,* 04-74271-DT

raise this claim on direct appeal. *See e.g. Houston v. Lockhart,* 9 F. 3d 62, 63-64

(8th Cir. 1993).  Moreover, because a similar argument regarding the

admissibility of polygraph evidence had been raised and rejected by the

Michigan Court of Appeals in this case, petitioner was not prejudiced by

appellate counsel's failure to raise this claim on appeal.

Petitioner next contends that appellate counsel was ineffective for failing

to raise the issue of trial counsel's ineffectiveness.  To resolve this portion of

petitioner's second claim, the Court will also address petitioner's fourth claim

which alleges the ineffectiveness of trial counsel.

Petitioner first claims that trial counsel was ineffective for failing to move

for the suppression of illegally obtained evidence, claiming that the affidavit

sworn to by police officials to obtain the search warrants in this case was based

on false information.

Petitioner has not offered any facts to show that the information contained

in these affidavits was false.  Conclusory allegations of ineffective assistance of

counsel, without any evidentiary support, do not provide a basis for habeas

relief. *See Reedus v. Stegall,* 197 F. Supp. 2d 767, 782 (E.D. Mich. 2001).

Because petitioner has not provided any evidence to substantiate this ineffective

assistance of counsel claim, this Court cannot evaluate whether the *Strickland*

standard has been met. *See Starcher v. Wingard,* 16 Fed. Appx. 383, 387 (6th

11

*Lagrou v. Jones,* 04-74271-DT

Cir. 2001).

Petitioner next contends that trial counsel was ineffective for failing to obtain independent testing of a knife found in petitioner's garage to challenge the prosecution's theory that this knife was used in the sexual assault.  As petitioner acknowledges, the prosecution's test results, which attempted to match a piece of plastic found on this knife to the victim's plastic cord, were inconclusive.  Trial counsel's decision not to introduce expert testimony regarding the inconclusive nature of this evidence does not amount to ineffective assistance of counsel. *See Hernandez v. Smith,* 100 Fed. Appx. 615, 617 (9th Cir. 2004).

Petitioner next contends that trial counsel was ineffective for failing to locate certain defense witnesses.  Petitioner first contends that trial counsel was ineffective for failing to call Wanda Brockway.  Petitioner does not indicate in his petition what Brockway's proposed testimony would be.  However, petitioner's appellate counsel raised a claim on direct appeal about the trial court's refusal to allow the late endorsement of Brockway as a character witness concerning petitioner's nonaggressive nature in sexual relations.  In rejecting this claim, the Michigan Court of Appeals noted that Brockway's testimony was cumulative of testimony offered by Hazel Barnett.  The Michigan Court of Appeals further noted that because of the substantial physical evidence which corroborated the sexual assault, Brockway's testimony concerning petitioner's character would

12

*Lagrou v. Jones,* 04-74271-DT

not have affected the outcome of the trial. *People v. Lagrou,* Slip. Op. at * 3.

The alleged ineffectiveness of counsel in failing to call Brockway as a character witness was not prejudicial to petitioner where this testimony would have been merely cumulative to the testimony of a witness who did testify and would have had less than a marginal effect required to establish reasonable doubt as to petitioner's guilt. *See Johnson v. Hofbauer,* 159 F. Supp. 2d 582, 607 (E.D. Mich. 2001).

Petitioner also claims that trial counsel was ineffective for failing to call Jennifer and John Byrd as defense witnesses.  Both of the Byrds testified at the *Ginther* hearing that they were not actually present when the sexual assault took place.   Because neither of the Byrds could rule out petitioner having sexually assaulted the victim on the night in question, trial counsel was not ineffective in failing to call these witnesses, nor was appellate counsel ineffective for failing to raise petitioner's *res gestae* witness claim involving Jennifer Byrd [claim # 5, *infra*] on his direct appeal. *See Alexander v. Smith,* 342 F. Supp. 2d 677, 692 (E.D. Mich. 2004).  To the extent that petitioner claims that the prosecutor did not comply with Michigan's *res gestae* statute by failing to produce Jennifer Byrd for trial, he would not be entitled to habeas relief.  Federal law does not require the production of res gestae witnesses. *Johnson,* 159 F. Supp. 2d at 601. "[U]nder federal law, there is no obligation on the part of the prosecutor to call

13

*Lagrou v. Jones,* 04-74271-DT

any particular witness unless the government has reason to believe that the
testimony would exculpate the petitioner." *Id.* (internal quotation omitted).
Jennifer Byrd would not have exculpated him of this crime.  Therefore, petitioner
is not entitled to relief on his fifth claim.

Petitioner next contends that trial counsel was ineffective for revealing
petitioner's prior criminal history to the jury in his opening statement.  A review of
the opening statement shows that trial counsel brought up the fact that petitioner
was on parole for an unspecified felony conviction to explain why he fled and
eluded the police on the night of the sexual assault. [Tr. II, pp. 28-29].  Trial
counsel's remarks in his opening statement about petitioner's prior conviction
and his being on parole appears to have been a strategic decision to explain
why petitioner fled from the police on the night in question, and as such,
counsel's performance was not deficient. *See United States v. Jackson,* 983 F.
2d 757, 761 (7th Cir. 1993).  Moreover, in light of the overwhelming evidence
against petitioner in this case, defense counsel's comments about petitioner's
prior conviction and his parole status did not prejudice petitioner, for purposes of
establishing ineffective assistance of counsel. *See Salem v. Yukins,* 414 F.
Supp. 2d 687, 699 (E.D. Mich. 2006).

Petitioner next contends that trial counsel was ineffective for failing to
move for the suppression of evidence that petitioner fled and eluded the police

14

*Lagrou v. Jones,* 04-74271-DT

on the night in question.  Under Michigan law, flight is relevant to consciousness of guilt. *Johnson v. Burke*, 903 F. 2d 1056, 1062 (6th Cir. 1990).  Because evidence of a flight is admissible to show consciousness of guilt, counsel was not ineffective for failing to object to evidence that petitioner had fled and eluded the police. *See United States v. Pointer,* 17 F. 3d 1070, 1072 (7th Cir. 1994).

Petitioner lastly claims that the cumulative nature of the errors deprived him of the effective assistance of counsel.  Because the individual claims of ineffectiveness alleged by petitioner are all essentially meritless or were of slight importance, petitioner cannot show that the cumulative errors of his counsel amounted to ineffective assistance of trial counsel. *Seymour*, 224 F. 3d at 557.

Because petitioner has failed to show that his trial counsel was ineffective, petitioner is unable to establish that appellate counsel was ineffective for failing to raise these ineffective assistance of trial counsel claims on his appeal of right. *See Johnson v. Smith,* 219 F. Supp. 2d 871, 883 (E.D. Mich. 2002).

Petitioner next claims that appellate counsel was ineffective for failing to raise the issue that the trial court erred in admitting petitioner's prior criminal history at trial.  This claim is meritless, since appellate counsel raised this issue as the second claim in his appeal brief and the Michigan Court of Appeals considered and rejected this claim on the appeal of right.

Petitioner next claims that appellate counsel failed to raise the issue of

15

*Lagrou v. Jones,* 04-74271-DT

petitioner being denied the right of self-representation at trial.  The Court will discuss petitioner's seventh claim when addressing this portion of petitioner's ineffective assistance of appellate counsel claim.

Criminal defendants have a constitutional right to conduct their own defense at trial, if they voluntarily and intelligently elect to do so. *Martinez v. Court of Appeal of California, Fourth Appellate Dist.,* 528 U.S. 152, 154 (2000); *Faretta v. California*, 422 U.S. 806, 807 (1975).  A defendant's request for self-representation must be made clearly and unequivocally. *Buhl v. Cooksey*, 233 F. 3d 783, 792 (3rd Cir. 2000).  The right to self-representation is waived if it is not timely and unequivocally asserted. *Jackson v. Ylst*, 921 F. 2d 882, 888 (9th Cir. 1990).   The right to self-representation may also be waived through conduct which indicates that the defendant is vacillating on the issue or has abandoned his or her request altogether. *Wilson v. Walker*, 204 F. 3d 33, 37 (2nd Cir. 2000). A waiver of the right to self-representation may also be found if it reasonably appears to the court that the defendant abandoned his initial request to represent himself. *Id.*

A review of the pre-trial transcript from July 21, 1997 indicates that petitioner expressed some dissatisfaction with his counsel, primarily due to the delay in petitioner's case coming to trial, as well as the fact that petitioner had to hire his own private investigator.  After a brief adjournment, petitioner's counsel

16

*Lagrou v. Jones,* 04-74271-DT

indicated that petitioner wanted to represent himself. The trial court engaged in a long colloquy with petitioner. Petitioner indicated that he was unable to obtain legal materials at the county jail and that the only way that he would be given access to such materials would be if he represented himself *pro per.* When asked if he wanted to represent himself, petitioner indicated that he wanted a competent attorney who would represent his best interests. The trial court indicated that petitioner had a competent attorney looking out for his best interests. Upon further questioning, petitioner clarified several times that he was willing to be represented by counsel, but simply desired access to law books while incarcerated. The court ordered that legal materials be provided to petitioner at the county jail.

Petitioner did not clearly and unequivocally waive his right to counsel, thus defeating his claim that he was denied his constitutional right to self-representation, in light of the fact that petitioner indicated to the trial court that he did not wish to waive his right to counsel and did not wish to represent himself, which was a clear and unequivocal withdrawal of his request for self-representation. *See United States v. Collins,* 129 Fed. Appx. 213, 217-18 (6th Cir. 2005). Because petitioner did not clearly and unequivocally invoke his right to self-representation, appellate counsel was not ineffective for failing to raise the issue on petitioner's appeal of right. *See Gonzalez-Gonzalez v. United*

17

*Lagrou v. Jones,* 04-74271-DT

*States,* 49 Fed. Appx. 322, 323 (1st Cir. 2002).

Petitioner also claims that he was deprived of the effective assistance of appellate counsel when he was forced to represent himself *pro per* at his post-trial evidentiary hearing on his ineffective assistance of trial counsel claims.  A review of the transcript from the evidentiary hearing shows that petitioner's appellate counsel was present at this hearing as stand-by counsel at the request of the trial court, but that petitioner had brought the motion for the evidentiary hearing *pro per.*  The prosecutor indicated that petitioner had attached to his *pro per* pleadings several letters from the State Appellate Defenders' Office, in which his appellate counsel had declined to raise the issue of the ineffectiveness of trial counsel or to file a motion for an evidentiary hearing after investigating petitioner's claim.  Appellate counsel had advised petitioner that he had a right to file a supplemental brief.  The trial court advised petitioner that he was representing himself at the hearing but would permit him to consult with appellate counsel. [Tr. 05/07/1999, pp.3-19].

A defendant can waive his right to counsel through his conduct. *See e.g. King v. Bobby,* 433 F. 3d 483, 492-94 (6th Cir. 2006).  In the present case, there was substantial evidence that petitioner waived his right to be represented by appellate counsel at this hearing.  Not only was petitioner aware that he would have to proceed *pro per* on his ineffective assistance of trial counsel claim after

*Lagrou v. Jones,* 04-74271-DT

appellate counsel declined to file this motion, petitioner actually sought to proceed without counsel with respect to this hearing by filing a *pro per* motion and by expressing a desire to represent himself at this hearing. Although petitioner was not expressly warned of the dangers of self-representation prior to this hearing, the trial court could reasonably have inferred that petitioner was aware of his rights from his various filings with the court. *See e.g. Beatty v. Caruso,* 64 Fed. Appx. 945, 951 (6th Cir. 2003). Petitioner is not entitled to habeas relief on his seventh claim.

In his reply brief, petitioner appears to argue that appellate counsel was ineffective for failing to raise his third claim involving prosecutorial misconduct. The Court will therefore address the merits of petitioner's third claim when discussing this claim.

When a petitioner seeking habeas relief makes a claim of prosecutorial misconduct, the reviewing court must consider that the touchstone of due process is the fairness of the trial, not the culpability of the prosecutor. On habeas review, a court's role is to determine whether the conduct was so egregious as to render the entire trial fundamentally unfair. *Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1355-56 (6th Cir. 1993). In evaluating prosecutorial misconduct in a habeas case, consideration should be given to the degree to which the challenged remarks had a tendency to mislead the jury and

19

*Lagrou v. Jones,* 04-74271-DT

to prejudice the accused, whether they were isolated or extensive, whether they were deliberately or accidentally placed before the jury, and, except in the sentencing phase of a capital murder case, the strength of the competent proof against the accused. *Id.*

Petitioner first claims that the prosecutor shifted the burden of proof by arguing that petitioner and his mother never offered samples of twine used by his sister to bind newspapers as proof that the plastic found on one of the knives did not come from the victim's telephone cord.

The trial court several times instructed the jury that the prosecution had the burden of proving petitioner's guilt beyond a reasonable doubt and that petitioner was presumed innocent.  (Tr. V, pp. 3, 83-84).  The prosecution's argument did not deprive petitioner of a fair trial, because any possible prejudice which might have resulted from the comment was cured by the trial court's instructions regarding the proper burden of proof. *See Scott v. Elo,* 302 F. 3d 598, 603-04 (6th Cir. 2002).

Petitioner next contends that the prosecution vouched for the credibility of the victim and attempted to invoke for her.  Petitioner, however, has failed to offer the Court the substance of these comments or even point to the portions of the transcripts where such comments were made. Conclusory allegations of prosecutorial misconduct fail to state a claim upon which habeas relief can be

20

*Lagrou v. Jones,* 04-74271-DT

granted. *See Johnson v. Renico,* 314 F. Supp. 2d 700, 710 (E.D. Mich. 2004).

This portion of petitioner's third claim is rejected.

Petitioner lastly claims that the prosecutor used his silence against him,

when he questioned petitioner about the DNA test results and asked petitioner

why he did not admit to being at the complainant's house.  A review of the

transcript shows that the prosecutor sought to ask petitioner questions about his

silence prior to petitioner being arrested and invoking his Fifth Amendment right

to silence.  The purpose of the question was to impeach petitioner's false alibi

with Hazel Barnett. (T. IV, pp. 135-138).

The use of a defendant's pre-arrest silence for impeachment purposes

does not violate the Fifth Amendment right against self-incrimination or the

Fourteenth Amendment right to due process. *Jenkins v. Anderson*, 447 U.S.

231, 238-39 (1980).  The prosecution's questions were therefore not improper.

Because petitioner has failed to establish that his claim of prosecutorial

misconduct was clearly meritorious, his appellate attorney was not

constitutionally ineffective for failing to raise the issue on direct appeal. *Hooks v.

Ward*, 184 F. 3d 1206, 1222 (10th Cir. 1999).

Petitioner lastly contends that appellate counsel was ineffective for failing

to raise a cumulative error claim on appeal.  Because none of the omitted

individual issues are meritorious, appellate counsel's failure to raise them as

*Lagrou v. Jones,* 04-74271-DT

cumulative error was not deficient. *See Jackson v. Shanks,* 143 F. 3d 1313, 1321 (10th Cir. 1998).

### C. The prior convictions claim.

In his sixth claim, petitioner contends that the trial court erred in admitting his prior convictions into evidence for impeachment purposes.

Errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *Seymour,* 224 F. 3d at 552.  Petitioner's challenge to the state trial court's decision to allow the prosecutor to use petitioner's prior convictions for impeachment purposes is not cognizable on habeas review, because it does not present a constitutional issue. *See Peoples v. Fulcomer,* 731 F. Supp. 1242, 1244 (E.D. Pa. 1990).

### IV.  ORDER

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DISMISSED WITH PREJUDICE.**


s/Arthur J. Tarnow
Arthur J. Tarnow
Dated: May 25, 2006                United States District Judge

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 25, 2006, by electronic and/or ordinary mail.

s/Catherine A. Pickles
Judicial Secretary

22